UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANIEL CRONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00232-JMS-TAB |
| | ) | |
| BRUCE IPPEL, | ) | |
| WEXFORD OF INDIANA, LLC., | ) | |
| MICHAEL MITCHEFF, | ) | |
| FALCONER, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Summary Judgment and Directing Entry of Final Judgment**

Daniel Crone, an inmate at New Castle Correctional Facility, claims that Wexford of Indiana, LLC and its employees Dr. Michael Mitcheff, Dr. Bruce Ippel, and Dr. Erick Falconer were deliberately indifferent to a knee injury he sustained in 2017. The defendants have moved for summary judgment, arguing that Mr. Crone's injuries were not caused by a Wexford policy or custom, that Dr. Mitcheff was not personally involved in Mr. Crone's medical treatment, and that Dr. Ippel and Dr. Falconer used their professional medical judgment in treating Mr. Crone. As explained below, the defendants' motion for summary judgment is **granted** and this action is **dismissed**.

**I. Summary Judgment Standard**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II. Factual Background

### A. Knee injury and treatment from Dr. Ippel

Mr. Crone fell in the shower and twisted his left knee in October 2017. Dkt. 52-5, p. 1. The knee was painful and swollen, but not broken. *Id.* at 3-5. Tylenol was ineffective, so a nurse recommended ibuprofen, heat, and ice to manage the pain and swelling. *Id.* The knee injury prevented Mr. Crone from continuing his prison employment working in the kitchen. *Id.*

2

Following a referral by the nursing staff, Dr. Ippel had an appointment with Mr. Crone on December 11, 2017. Dkt. 52-5 at 6-7. Mr. Crone told Dr. Ippel that the pain in his knee was similar to an old shoulder injury that had healed on its own after a cortisone shot. *Id.* at 6. Dr. Ippel told Mr. Crone to keep using an ace bandage and "emphasize[d] the importance of a trial of intense physical therapy as needed for pain issues." *Id.* He warned Mr. Crone to avoid additional falls, which could eventually lead to arthritis, and ordered a nine-month prescription for Mobic to manage pain and swelling. *Id.* at 6-7.

Two months later, the pain in Mr. Crone's knee had gotten worse, and he was having trouble walking without crutches. Dkt. 52-4, p. 7. He had a second appointment with Dr. Ippel on February 26, 2018. Dkt. 52-5 at 15-17. At the appointment, Mr. Crone told Dr. Ippel that Mobic, massage, and heat did not provide much benefit. *Id.* at 15. Dr. Ippel administered a cortisone shot to Mr. Crone's left knee. *Id.* According to Mr. Crone, the cortisone shot helped "the tightness of it, but the pain still presided. The movement was a little better, but not how it should have been." Dkt. 52-4 at 7 (cleaned up). Dr. Ippel ordered a "more substantial brace" and a six-month prescription for Tylenol. Dkt. 52-5 at 15-16. He also provided Mr. Crone with a home exercise plan that included leg lifts, abductor exercises, scissors, and leg extensions. *Id.*; dkt. 55-4 at 8. Dr. Ippel wanted to see if the exercises, Tylenol, and brace would help, and noted that he would consider "[a]dditional interventions depending on how these work out." Dkt. 52-5 at 15.

In March 2018, Mr. Crone submitted a Request for Health Care form stating that he had not received the more substantial knee brace. Dkt. 55-1 at 14. Nurse Theresa Auler brought this issue to Dr. Ippel 's attention in an email on March 11, 2018, at 9:14 p.m. *Id.* at 8. Dr. Ippel responded the next morning at 6:47 a.m., "delegat[ing]" the request to Nurse Auler. *Id.* After this email exchange, Mr. Crone received his brace. Dkt. 52-4 at 7.

Dr. Ippel did not have any further involvement in treating Mr. Crone's knee injury. Dkt. 52-2 at ¶ 10. He retired in July 2019. *Id.* at ¶ 11.

### B. Continuing pain and request for physical therapy

Mr. Crone fell again in July 2018 and was treated by the nursing staff. Dkt. 55-1 at 6. He told the treating nurse that his "knee gave out and [he] fell into the sink." *Id.* There is no evidence that the defendants were aware of this fall at or around the time it happened.

After July 2018, Mr. Crone did not request additional treatment for his knee injury for about 26 months. He testified at his deposition that he "ask[ed] for prescription refills" but "it was the doctor's order to take time, exercise, and I pursued that." Dkt. 52-4 at 7.

In September 2019, Mr. Crone was classified as having a chronic condition, and he was enrolled in the chronic care clinic. Dkt. 55-1 at 2-4. Mr. Crone argues in his unverified response brief that he saw a medical provider every 90 days for his knee pain, but there is no admissible evidence that any of the defendants treated him at these visits or that he complained of continued or worsening knee pain at these visits.[1] Dkt. 55 at 1-2.

Mr. Crone testified at his deposition that his left knee injury was "declining, but not like completely downhill deterioration" between 2019 to 2020. Dkt. 52-4 at 8. At some point, he began experiencing pain in his right knee. *Id.* at 7. Mr. Crone believes that he hurt his right knee by favoring his right leg to avoid aggravating the pain in his left knee. *Id.*

On September 8, 2020, Mr. Crone saw non-party Dr. John Nwannunu and complained of worsening knee pain. Dkt. 52-5 at 21-23. Dr. Nwannunu diagnosed Mr. Crone with patellofemoral pain syndrome and submitted a request for physical therapy. *Id.* The request for physical therapy

---

[1] Statements made in an unverified brief or pleading are not evidence. *Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017). The Court will consider the arguments in Mr. Crone's response brief but will not treat the response brief as a verified affidavit for purposes of summary judgment.

was denied by Wexford's Associate Regional Medical Director Dr. Duan Pierce. *Id.* at 26; dkt. 52-3 at ¶ 8. Dr. Pierce recommended a home exercise plan as an alternative to physical therapy. *Id.*

### C.  Treatment from Dr. Falconer

Mr. Crone had an appointment with Dr. Falconer on November 12, 2020. Dkt. 52-5 at 24-25. Dr. Falconer reviewed the alternative home exercise plan with Mr. Crone and continued his prescription for Tylenol. *Id.* Mr. Crone told Dr. Falconer that he had been performing exercises for the last three years, and that his condition had not improved. Dkt. 52-1 at ¶ 7. Dr. Falconer told Mr. Crone that there were specific exercises that he could perform to address his symptoms and that these exercises were noted on an instruction sheet. *Id.*

There is no evidence that Dr. Falconer had other appointments with Mr. Crone or that he was aware of Mr. Crone's continuing knee pain after November 2020. There is no evidence that Mr. Crone submitted additional Request for Health Care forms regarding his knee pain or that he requested additional treatment from the defendants after November 2020.

### D.  Dr. Mitcheff

During the time relevant to this lawsuit, Dr. Mitcheff was Wexford's Regional Medical Director for Indiana. Dkt. 52-3 at ¶ 3. His duties were mostly administrative, and he had little direct patient contact. *Id.* He reviewed requests by physicians for offsite medical care and non-formulary medications. *Id.* Associate Regional Medical Director Dr. Pierce also reviewed offsite medical care requests and was responsible for denying Mr. Crone's request for physical therapy.[2] *Id.* at ¶ 8. Dr. Mitcheff states that Dr. Pierce's denial could have been reconsidered if Mr. Crone's knees had failed to improve. *Id.*

---

[2] Dr. Pierce is not a party to this lawsuit.

Dr. Mitcheff does not recall being involved in Mr. Crone's care and treatment. *Id.* at ¶ 5. Mr. Crone testified that he never had a face-to-face interaction with Dr. Mitcheff. Dkt. 52-4 at 9.

### III. Discussion

Mr. Crone argues that the defendants should have provided him with additional medical care, such as physical therapy, and should have pursued more thorough diagnostic tools, such as a magnetic resonance image ("MRI"). He also argues that Wexford is responsible for his medical care because his medical records list Wexford at the "Responsible Party" and because he received inadequate medical care from Wexford employees. *See generally* dkt. 55.

Wexford argues that it is not liable because there is no evidence that Mr. Crone's allegedly inadequate medical care was caused by a Wexford policy or custom. Dkt. 50 at 19-20. Dr. Mitcheff argues that he was not personally involved in Mr. Crone's medical care. *Id.* at 16-17. Dr. Ippel argues that he exercised his professional medical judgment in treating Mr. Crone. *Id.* at 16. And Dr. Falconer argues that his role in Mr. Crone's treatment was limited to reviewing his treatment plan following the denial of physical therapy by Dr. Pierce. *Id.* at 18-19. Regarding Mr. Crone's arguments about the failure to order an MRI, Dr. Falconer argues that there is no evidence that an MRI was required or that failing to order an MRI fell outside the standard of care. Dkt. 56 at 3.

#### A. Deliberate indifference standard

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate

6

indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For the purposes of this motion, the Court assumes that Mr. Crone's knee injury is a serious medical need. To survive summary judgment, Mr. Crone must show that the defendants acted with deliberate indifference—that is, that they consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Mr. Crone "must provide evidence that [a defendant] actually knew of and disregarded a substantial risk of harm." *Id.* "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. In many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42.

**B. Wexford**

When the defendant in a § 1983 lawsuit is a corporate entity acting under color of state law, the plaintiff may prevail in three ways:

- First, the plaintiff may show that the alleged unconstitutional conduct implements or executes an official policy adopted by the corporation's officers.
- Second, the plaintiff may show that the unconstitutional action was done pursuant to a widespread custom, even one that is not formally codified.
- Third, the plaintiff may prove that an actor with final policymaking authority within the entity adopted the relevant policy or custom.

*See Thomas v. Martija*, 991 F.3d 763, 773 (7th Cir. 2021) (citing *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978)).

There is no evidence of a Wexford policy or custom in the record and, thus, no evidence that Mr. Crone's allegedly inadequate medical care was caused by a Wexford policy or custom. There is no evidence that any prisoner's request for physical therapy was denied other than Mr. Crone's, or that any other prisoner had a serious orthopedic injury and was denied an MRI. *See Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (holding that 4 incidents over approximately 11 months involving only the plaintiff was insufficient to show a widespread practice or custom for purposes of *Monell* liability).

Further, there is no evidence that Dr. Pierce was Wexford's final policymaker on the issue of approving requests for physical therapy. The Seventh Circuit has explained that for purposes of *Monell* liability "the authority to *set* policy, i.e., to adopt rules for the conduct of the government, distinguishes a 'final policymaker,' whose decisions may subject a municipality to § 1983 liability, from an official who merely possesses 'authority to *implement* pre-existing rules.'" *Waters v. City of Chicago*, 580 F.3d 575, 582 (7th Cir. 2009) ("The evidence at trial established that Commissioner Rice was the final decisionmaker for purposes of terminating [transportation]

8

employees and that she made the decision to terminate [plaintiff's employment]. However, she was not a final policymaker for the City with respect to employment policy.").

In this case, there is no evidence that Dr. Pierce was responsible for setting, rather than merely implementing, policies about approving or denying requests for physical therapy. Even if Dr. Pierce's decision to deny Mr. Crone's physical therapy request was "final" in the sense that Dr. Pierce was the ultimate decisionmaker, that fact, without more, would not create *Monell* liability against Wexford.

Mr. Crone's argument that Wexford is liable because its employees provided him with inadequate medical care is contrary to established precedent. *Respondeat Superior* liability, where the company is automatically liable for the conduct of its individual employees, does not apply to private corporations in claims brought under § 1983. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014).

The fact that Wexford is listed as the "Responsible Party" on Mr. Crone's Indiana Department of Correction medical records, by itself, does not confer § 1983 liability on Wexford for every aspect of Mr. Crone's medical care. The contours of Wexford's liability for Mr. Crone's medical care under § 1983 derive from the statute itself and binding precedent from the United States Supreme Court and the Seventh Circuit Court of Appeals—not from notations on Indiana Department of Correction medical records. The only reasonable interpretation of Mr. Crone's medical records listing Wexford as the "Responsible Party" is that Wexford had a contract to provide medical services to inmates incarcerated at the Indiana Department of Correction. This evidence merely shows that Wexford acted "under color of state law" with respect to Mr. Crone's medical care, which is an element of Mr. Crone's claim that Wexford does not contest. Accordingly, Wexford's motion for summary judgment is **granted**.

### C. Dr. Mitcheff

Dr. Mitcheff was not Mr. Crone's treating physician and was not personally involved in Mr. Crone's medical care. He did not deny Mr. Crone's request for physical therapy, as alleged in the complaint. "Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (cleaned up) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")). Because Dr. Mitcheff was not personally involved in Mr. Crone's allegedly inadequate medical care, Dr. Mitcheff's motion for summary judgment is **granted**.

### D. Dr. Ippel

Dr. Ippel had two appointments with Mr. Crone, one in December 2017 and another in February 2018. At the first appointment, Dr. Ippel reviewed Mr. Crone's orthopedic medical history, conducted a physical examination, and prescribed Mobic for pain and swelling. Dkt. 52-5 at 6-7. At the second appointment, Dr. Ippel pursued additional treatments. He administered a cortisone shot, which Mr. Crone admits provided some relief for inflammation and improved his range of motion. Dkt. 52-4 at 7. He switched Mr. Crone's prescription from Mobic, which was ineffective, back to Tylenol, which Mr. Crone admits provided a small measure of relief. *Id.* at 5. He prescribed a home exercise plan for Mr. Crone and placed an order for a more substantial knee brace. Dkt. 52-5 at 15-16. When Mr. Crone submitted a Request for Health Care form complaining that he had not received the more substantial knee brace, Dr. Ippel quickly responded to an email about the issue and delegated the request to Nurse Auler. Dkt. 55-1 at 8.

Dr. Ippel was open to ordering additional treatments if the prescribed treatments did not improve Mr. Crone's condition. Dkt. 52-5 at 15. However, Mr. Crone did not request additional medical care for his knee until after Dr. Ippel retired. Dkt. 52-2 at ¶ 11; dkt. 52-4 at 7.

The undisputed evidence shows that Dr. Ippel provided care consistent with his professional medical judgment. Rather than persisting in treatment he knew was ineffective, Dr. Ippel provided additional treatments when Mr. Crone's condition did not improve. *See Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010) (prison physician may be liable for merely persisting in treatments known to be ineffective),

The Court is unpersuaded by Mr. Crone's argument that Dr. Ippel should have followed up on his condition even though Mr. Crone himself did not request additional care. First, this argument is contrary to established precedent that claims for deliberate indifference require a medical provider to have actual subjective knowledge of the prisoner's serious medical condition and then consciously disregard that condition. *Petties*, 836 F.3d at 728. Implicit in Mr. Crone's argument is that Dr. Ippel did not have actual subjective knowledge about Mr. Crone's continuing knee pain after March 2018, but nevertheless should have scheduled an appointment on his own initiative to find out how Mr. Crone was doing. This argument fails because actual subjective knowledge of a serious medical need is an element of a deliberate indifference claim, and without this knowledge, Dr. Ippel cannot be deliberately indifferent.

Second, courts are mindful of the division of labor within prisons. *Cf. Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005). An Indiana prisoner seeking medical care typically fills out a Request for Health Care form, which is reviewed by administrators and nursing staff before the prisoner receives an appointment with a physician. *See generally* dkt. 52-5 (Mr. Crone's medical records); dkt. 55-1 at 12 (Mr. Crone's Request for Health Care form). There is no evidence that

this process created a barrier between Mr. Crone and Dr. Ippel. To the contrary, the record shows Mr. Crone submitted Request for Health Care forms about his knee injury and, when he did, was referred to appointments with prison physicians. *Id.* Dr. Ippel's decision to follow the regular process and wait for Mr. Crone to notify him of continuing knee pain, rather than scheduling a follow-up appointment on his own initiative to check on Mr. Crone's condition, did not violate the Eighth Amendment. Accordingly, Dr. Ippel 's motion for summary judgment is **granted**.

### E.  Dr. Falconer

Mr. Crone argues that Dr. Falconer persisted in treatments he knew were ineffective at the November 2020 appointment. Indeed, the Court is troubled that after three years of Mr. Crone performing home exercises and taking Tylenol without significant relief, he was prescribed more of the same in the fall of 2020. That said, Mr. Crone's request for physical therapy was denied by Dr. Pierce, who is not a party to this lawsuit, and the evidence does not show that Dr. Falconer could have prescribed a more effective treatment but refused to do so. Aside from his request for an MRI and physical therapy, Mr. Crone has not identified any specific treatment or diagnostic testing that Dr. Falconer should have performed. *See generally* dkt. 55.

Mr. Crone also argues that Dr. Falconer, and perhaps other members of the medical staff, should have requested an MRI, which he argues could have provided more information about cartilage and other soft tissue structures in his knees. Dkt. 55 at 1-2, 6. The Seventh Circuit considered and rejected a similar argument in *Pyles v. Fahim*, 771 F.3d 403 (7th Cir. 2014). In that case, an Illinois prisoner slipped on wet stairs and injured his lower back. *Id.* The prisoner requested an MRI when his condition did not improve, but the prison physician denied the request. *Id.* In ruling for the physician, the Seventh Circuit explained:

> An MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is a classic example of a matter for medical judgment. Mr. Pyles did not submit evidence from which a jury reasonably could find that Dr. Fahim's exercise of medical judgment departed significantly from accepted professional norms. Rather, Dr. Fahim's decision to forego an MRI was implicitly endorsed by every other doctor who examined Mr. Pyles.

*Id.* at 411 (cleaned up).

As in *Pyles*, there is no evidence that an MRI was clinically indicated or that the failure to order an MRI deviated from the standard of care. Nor is there evidence that an MRI would have improved the medical staff's ability to treat Mr. Crone's knee injury or led to a more favorable outcome. Accordingly, Dr. Falconer's motion for summary judgment is **granted**.

### IV. Conclusion

As explained above, the defendants' motion for summary judgment, dkt. [50], is **granted**. This action is now **dismissed**. Final judgment in accordance with this Order shall now issue.

**IT IS SO ORDERED**.

Date: 2/8/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

DANIEL CRONE
220550
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com